IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARLENE M. ESTACION,<br><br>        Plaintiff,<br><br>    vs.<br><br>KAUMANA DRIVE PARTNERS, LLC, dba LEGACY HILO REHABILITATION & NURSING CENTER, a limited liability company; ANDRE HURST, an individual; and BENJAMIN MEEKER, an individual,<br><br>        Defendants. | Civ. No. 19-cv-00255 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HURST'S AND MEEKER'S MOTION TO DISMISS, ECF NO. 19 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HURST'S AND MEEKER'S MOTION TO DISMISS, ECF NO. 19**

## I. INTRODUCTION

Pro se Plaintiff M. Arlene Estacion filed the instant action, naming as Defendants Kaumana Drive Partners, LLC *dba* Legacy Hilo Rehabilitation & Nursing Center, a limited liability company ("Legacy Hilo"); and members of the limited liability company ("LLC"), Andre Hurst ("Hurst") and Benjamin Meeker ("Meeker"), alleging that she was wrongfully terminated for reporting alleged wrongdoing to the United States Department of Labor ("U.S. DOL"). Compl., ECF No. 1, at Page ID# 8. Before the court is Hurst's and Meeker's Motion to Dismiss Plaintiff's Complaint against them, arguing that the Complaint fails to

state a claim, and, in any event, the LLC shields them from liability. For the reasons discussed below, the court GRANTS in part and DENIES in part the Motion to Dismiss.

## II. **BACKGROUND**

**A.    Factual Background[1]**

Plaintiff was employed at Legacy Hilo, starting June 1, 2016, as Human Resources Director. *Id*. Meeker is "an owner/officer" of Legacy Hilo, *id.*, and "was involved in the oversight of [Legacy Hilo's] payroll." *Id.* Hurst is also "an owner/officer" of Legacy Hilo, *id.*, and was "responsible for the day-to-day management" of Legacy Hilo. *Id.* Johnalyn K. Rodrigues Nosaka ("Nosaka") was the Administrator of Legacy Hilo, who reported directly to Hurst. *Id.* Plaintiff reported directly to both Nosaka and Hurst. *Id.*

During her time at Legacy Hilo, Plaintiff "had no performance issues and did not receive any disciplinary actions or write-ups." *Id.* Her "performance evaluations consistently rated her performance as excellent." *Id.* On or around June 2017, Plaintiff was also assigned the title of "Compliance Officer" at Legacy Hilo. *Id.* "As Compliance Officer, she was responsible for planning,

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2

implement[ing], and maint[aining] the corporate-wide compliance program at [Legacy Hilo]." *Id.* On or around December 15, 2017, Hurst assigned Plaintiff "additional responsibilities in the business office, which included managing all facility deposits, resident trust funds, petty cash, writing of facility checks and other duties as assigned" by Hurst. *Id.* Plaintiff obtained the title "Business Office Manager" on March 23, 2018. *Id.*

Around March 2018, Plaintiff, in her capacity as Human Resources Director, received a call from Jose Reyna, an investigator from the Wage and Hour Division ("WHD") of the U.S. DOL, *id.*, informing her that the WHD would be conducting an investigation of Legacy Hilo. *Id.* Around April 2018, Plaintiff received an e-mail letter from Reyna indicating that the WHD would be conducting an investigation on April 27, 2018 to determine Legacy Hilo's compliance with the Fair Labor Standards Act ("FLSA"). *Id.* Plaintiff forwarded this e-mail to Hurst, Meeker, Nosaka, and Robert Pumphrey, Legacy Hilo's accountant. *Id.*

On Friday April 27, 2018, Reyna conducted WHD's investigation of Legacy Hilo. *Id.* at PageID# 9. Plaintiff participated in the investigation, responding to Reyna's questions. *Id.* Specifically, Plaintiff informed Reyna that

"each Tuesday prior to the Friday payday, all department heads were summoned to the Conference room regarding the department's overtime and were directed by . . . Hurst to 'shave' overtime even though the employee worked it. For example, if an individual worked 30.82 hours, the .82 would be shaved off." *Id.* Reyna requested additional information, which Plaintiff said she would supply the upcoming Monday or Tuesday (i.e., April 30 or May 1). *Id.*

On Sunday, April 29, 2018, Legacy Hilo terminated Plaintiff, "falsely assert[ing] that [she] . . . had instructed employees to lie during a compliance investigation, acted insubordinately, and had poor performance." *Id.* After Plaintiff's termination, Hurst "told several employees at [Legacy Hilo]" that Plaintiff "was a 'thief' and that she had 'embezzled money from Legacy [Hilo].'" *Id.*

**B.    Procedural Background**

On May 16, 2019, Plaintiff filed this action against Defendants Legacy Hilo, Hurst, and Meeker, asserting five claims against all three Defendants: a federal claim of retaliation in violation of the FLSA § 15(a)(3), 29 U.S.C. § 215(a)(3); and state law claims of retaliation in violation of the Hawaii Whistleblower's Protection Act ("HWPA"), Haw. Rev. Stat. ("HRS") § 378-62 *et seq.*; wrongful termination in violation of public policy; intentional infliction of

4

emotional distress ("IIED"); and defamation. *See* ECF No. 1 at PageID #9-11. Defendant Legacy Hilo filed its Answer on July 8, 2019. ECF No. 15. Defendants Hurst and Meeker filed their Motion to Dismiss on July 15, 2019, arguing that the claims against them should be dismissed for failure to allege any facts against them as to Plaintiff's termination.[2] ECF No. 19. Defendants further argue, in any event, they are shielded from liability as members of Legacy Hilo. *Id.* Estacion filed her Opposition on September 16, 2019. ECF No. 27. On September 23, 2019, Hurst and Meeker filed their Reply. ECF No. 28. A hearing was held on October 7, 2019.

## III. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

---

[2] Hurst and Meeker fail to specify which claims they are seeking to dismiss, so the court construes the Motion as against all five claims.

5

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

Because Plaintiff is proceeding pro se, the court liberally construes her Complaint.[3] *See Erickson*, 551 U.S. at 94; *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). A liberal construction of a pro se complaint,

---

[3] Defendants assert that Plaintiff appears to be aided by a lawyer and should not be afforded the liberal standard given to pro se litigants. Unless the court has *proof* that Plaintiff is being assisted by a lawyer, it will apply the traditional pro se standards.

however, does not mean that the court will supply essential elements of a claim that are absent from the complaint. *See Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (citation omitted). The court must grant leave to amend if it appears that Plaintiff can correct the defects in her Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc), but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment") (citation omitted).

## IV. <u>DISCUSSION</u>

### A. Plaintiff Has Not Sufficiently Alleged *Any* Facts Against Meeker or Hurst Relating to Her Termination at Legacy Hilo (Claims 1, 2, & 3)

As a threshold matter, Plaintiff's Complaint fails to allege any specific facts as to how Meeker or Hurst terminated or otherwise participated in Plaintiff's termination. Instead, she simply alleges that "the Company wrongfully terminated" her. *See* ECF No. 1 at PageID# 9. And as a result, she has not alleged *any* facts giving rise to a plausible inference of cognizable FLSA, HWPA, or wrongful termination claims against Meeker or Hurst.

In her Opposition, Plaintiff argues that the theory of alter ego liability should apply, but she has not alleged any facts giving rise to an inference to pierce the corporate veil.[4]  Accordingly, Defendants' Motion to Dismiss as to violations of FLSA (claim 1), HWPA (claim 2), and wrongful termination (claim 3) is GRANTED.

Nevertheless, amendment is not futile, and leave to amend is GRANTED as to these three claims, as set forth below.

**B.    HRS § 428-303(a)**

Defendant argues that HRS section 428-303(a) shields individual Defendants from all claims asserted against them, because they are all members of the LLC.[5]  This argument fails.

Under section 428-303(a), a member of an LLC "shall not be personally liable for any debt, obligation, or liability of the company *solely by*

---

[4]  A court considers a number of factors in determining whether alter ego liability exists. *See Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 242, 982 P.2d 853, 871 (Haw. 1999) (*citing Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 836-37 (1962)) (listing factors), *superseded by statute on other grounds as stated in Calipjo v. Purdy*, 144 Haw. 266, 276, 439 P.3d 218, 229 n.23 (Haw. 2019).  Plaintiff's Complaint does not allege the existence of any of these factors.

[5] Defendants characterize this argument as falling under the doctrine of *respondeat superior*.  Defendants are mistaken.  The doctrine of *respondeat superior* allows for vicarious liability of employers for the tortious conduct of their employees.  *See Wong-Leong v. Hawaiian Indep. Refinery, Inc.*, 76 Haw. 433, 438, 879 P.2d 538, 543 (Haw. 1994) ("Under the theory of respondeat superior, an employer may be liable for the negligent acts of its employees that occur within the scope of their employment.").  This doctrine does not, as Defendants suggest, also shield individuals from personal liability.

*reason of being or acting as a member or a manager*." HRS § 428-303(a) (emphasis added). Thus, the italicized language distinguishes between actions taken "solely," "acting as a member or a manager"—where an individual would be shielded from personal liability—and actions *not* "solely by reason of being or acting as a member or a manger"—where he or she would not be shielded. *See id.*

The comments to the Uniform Limited Liability Company Act ("ULLCA") are instructive.[6] "Where a member or manager delegates or assigns the authority or duty to exercise appropriate company functions," the individual is considered to be acting "solely" as an LLC member or manager and would not be personally liable, whereas "[a] member or manager is responsible for acts or omissions to the extent those acts or omissions would be actionable in contract or tort against the member or manager if that person were acting in an individual capacity"—in which case, a member would be personally liable. ULLCA § 303, Cmt (1996). Accordingly, the plain language and the comment to section 303 of the ULLCA make clear that an LLC member is not necessarily shielded from all liability relating to the entity by virtue of merely being a member.

---

[6] "Hawaii adopted the . . . ULLCA" in 1997. J.W. Callison & M.A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice § 14:21 (2019 ed.); *see also* HRS § 428-1201 (stating that Hawaii's adoption of the ULLCA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it").

9

With this in mind, the court turns to each claim asserted by Plaintiff to determine whether individual liability is available as to each cause of action, for purposes of providing guidance to Plaintiff, if she chooses to amend her Complaint.

**C.    Individual Liability Under FLSA, HWPA, and Wrongful Termination**

   *1.    FLSA*

Section 215(a)(3) of FLSA makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." Section 216(b) in turn creates a private right of action against any "employer" who violates section 215(a)(3). And FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The Ninth Circuit has held that "[t]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *see also Arias v. Raimondo*, 860 F.3d 1185, 1191-92 (9th Cir. 2017) (finding the term "employer" for purposes of FLSA's anti-retaliation provision

"extend[s] . . . [the statute's] reach beyond actual employers" and can include individuals acting indirectly and on behalf of wage-paying employers). Thus, "Congress clearly means to extend section 215(a)(3)'s reach beyond actual employers." *Arias*, 860 F.3d at 1191-92 (finding that an FLSA retaliation claim can be brought against the attorney of an employer who was alleged to have retaliated on behalf of the employer). The anti-retaliation provision extends to "any person acting directly or indirectly in the interest of the employer." Accordingly, Plaintiff is not barred from asserting an FLSA claim against Meeker or Hurst in their individual capacities.[7]

### 2. HWPA

The Parties have not identified, and the court has not found, Hawaii state cases interpreting the scope of the HWPA anti-retaliation provision, HRS

---

[7] Other district courts have also held that FLSA allows for individual liability against LLC members because of the statute's broad definition of "employer." 29 U.S.C. § 203(d); *see Cruickshank v. Tellus Global, LLC*, 2018 WL 6606514, at *2 (M.D. Fl. Dec. 17, 2018) (noting allegations that an individual defendant, who is the managing member of defendant LLC company "who regularly exercised authority to hire, fire, and discipline employees, and supervised and controlled plaintiff's work schedule and conditions of employment," are sufficient for an FLSA claim); *Scholly v. JMK Plastering, Inc.*, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008) (finding that LLC members can be held liable under FLSA and citing to other district court cases in the Eastern District of Pennsylvania for the same proposition); *Mayer v. Prof. Ambulance, LLC*, 211 F. Supp. 3d 408, 416 (D.R.I. 2016) (finding allegations that LLC members were "owner, co-owner, and/or senior leadership" and also ran "day-to-day operations of the business" sufficient to survive a motion to dismiss for purposes of an FLSA violation claim).

section 428-303(a). Three judges in this district have held, though, after careful consideration of the statute and its legislative history, that the HWPA bars individual liability. *See e.g., Hillhouse v. Haw. Behavioral Health, LLC*, 2014 WL 4662378, at *8 (D. Haw. Sept. 18, 2014) (Kobayashi, J.) (finding that HWPA precludes individual liability of an LLC member; thus, "the only way that Plaintiff can prevail on this claim . . . is by proving [the LLC] is [LLC member's] alter ego"); *Casumpang v. Haw. Commercial & Sugar Co.*. 2014 WL 4322168, at *18, n.13 (D. Haw. Aug. 29, 2014) (Kay, J.) ("To the extent Plaintiff asserts HWPA claims against [individual defendant], these claims fail because an individual employee cannot be held liable under HRS § 378-62"); *Ragasa v. Cty. of Kauai*, 2015 WL 5472866, at *3-4 (D. Haw. Sept. 15, 2015) (Watson, J.) (same). Following this reasoning, Plaintiff is barred from asserting a HWPA claim against Hurst or Meeker in their individual capacities unless she can show that Legacy Hilo is the alter ego of Hurst or Meeker.[8]

---

[8] Neither party addresses whether a plaintiff may bring a claim for wrongful termination under *Parnar v. American Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (Haw. 1982), against a defendant in his or her individual capacity. At least one judge in this district has determined that a *Parnar* claim is limited to suits against employers, not employees. *See Ritchie v. Hawaii*, 2014 WL 4905336, at *10 (D. Haw. Sept. 30, 2014). Courts in other jurisdictions, though, have allowed wrongful termination claims against individuals to proceed under their respective state laws, because "the purpose of the wrongful discharge tort . . . is best served if individual employees . . . are held personally liable for conduct that violates public policy . . . . the tortious act is not the discharge itself; rather, the discharge becomes tortious by virtue of the wrongful reasons behind it." *Blackman v. Omak Sch. Dist.*, 2019 WL 2396569, at *4 (E.D. Wash. June 6,
(continued . . .)

### D. Plaintiff's IIED and Defamation Claims (Claims 4 and 5)

As to Plaintiff's IIED and defamation claims, Plaintiff is not barred from asserting these state law claims of intentional torts against Hurst or Meeker in their individual capacities. While Hawaii courts have not discussed the scope of individual liability of LLC members pursuant to section 428-303, courts in other jurisdictions have held that "corporate officers can be held personally liable when they commit intentional torts . . . and that one need not pierce the corporate veil in order to establish such liability," and are not shielded by the LLC entity. *See, e.g., Frontier Energy Holding Grp., LLC v. Suprock*, 2010 WL 11434982, at *2 (D.N.M. July 12, 2010) (applying the New Mexico counterpart to the HRS § 428-303 and rejecting LLC member defendant's argument that false statements were made within the "course and scope of his authority" because "Plaintiffs' complaint . . . alleges that [both the company and the individual person] engaged in the wrongful conduct (here, the making of false and defamatory statements), and finding that Plaintiff is trying to hold defendant liable for his 'own tortious acts'").[9]

---

2019); *see also VanBuren v. Grubb*, 471 F. App'x. 228, 235 (4th Cir. 2012) (noting a split in authority on whether individual liability should be imposed for those who participate in the wrongful discharge). Given the lack of clarity in this area of law (unlike the FLSA and HWPA claims), and the lack of briefing, the court does not reach this issue in this Order.

[9] *See also Circuit Lighting, Inc. v. Progressive Prods., Inc.*, 2013 WL 4510134, at *6 (D.N.J. Aug. 23, 2013) ("It is still possible, however, to attach individual liability to a principal without first piercing the corporate veil."); *see also Cal. Crane Sch., Inc. v. Nat'l Com'n for*

(continued . . .)

Similarly here, actions sounding in intentional torts like defamation or IIED are separate and unrelated to an LLC member's role as a member or manager pursuant to section 428-303(a). Rather, such torts arise out of a defendant's own wrongful conduct. This is consistent with Hawaii case law, which has made a similar finding as to other corporate entities. *See Cahill v. Haw. Paradise Park Corp.*, 56 Haw. 522, 526, 543 P.2d 1356, 1360 (Haw. 1975) ("The law is firmly established that officers, directors or shareholders of a corporation are not personally liable for the tortious conduct of the corporation or its other agents, unless there can be found some active or passive participation in such wrongful conduct by such persons."). Accordingly, section 428-303 does not shield LLC members from unlawful conduct like the intentional torts of defamation and IIED.

Applying this framework, Plaintiff has adequately pled facts alleging specific wrongful conduct as to Hurst in his individual capacity. Specifically, she alleges that Hurst "told several employees at [Legacy Hilo] that Plaintiff, Arlene Estacion was a 'thief' and that she had 'embezzled money from Legacy [Hilo].'" ECF No. 1 at PageID# 9.[10] Further, it logically follows that Hurst's intentional

---

*Certification of Crane Operators*, 2008 WL 3863426, at *3 (E.D. Cal. Aug. 19, 2008) ("California law is clear that under an intentional tort action, all individual defendants shown to have participated are liable for damages, even though the corporation may be liable as well.").

[10] Defendants do not move to dismiss based on a failure to state a claim as to substantive elements; merely that they are shielded from individual liability against Plaintiff as LLC

(continued . . .)

defamatory acts would purportedly cause emotional distress. Thus, the Motion to Dismiss the defamation and IIED claims against Hurst are DENIED.

As to Meeker though, Plaintiff has not pled any allegations of defamation or IIED. Even construing Plaintiff's Complaint liberally, there are no facts alleged as to Meeker, except that he "was involved in the oversight of the Company's payroll." *See id.* at Page ID# 8. None of these allegations alleges any specific wrongful conduct by Meeker.

For the foregoing reasons, Plaintiff sufficiently alleged facts to establish individual liability as to Hurst for the intentional torts of defamation and IIED, but failed to do so as to Meeker. If Plaintiff intends to amend her Complaint as to Meeker, she must allege facts *specific to Meeker* showing how he took actions in a way that defamed Plaintiff and caused her emotional distress. Accordingly, the Motion to Dismiss claims 4 (IIED) and 5 (defamation) is DENIED as to Hurst, but GRANTED, with leave to amend, as to Meeker.

**E.     Leave to Amend**

Plaintiff is granted leave to amend her Complaint by November 18, 2019, to attempt to cure the deficiencies set forth above. An amended complaint generally supersedes a prior complaint and must be complete in itself without

---

members. Thus, the court does not address whether these allegations adequately plead each element of each tort.

reference to the prior pleading. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "First Amended Complaint," and it may not incorporate any part of the original Complaint by reference, but rather, any specific allegations must be retyped or rewritten in their entirety to be considered as part of the First Amended Complaint. Plaintiff may include only one claim per count. Any cause of action that is not asserted in the First Amended Complaint is waived. *See id.*

//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss, with leave to amend, as to claims 1 (FLSA violation), 2 (HWPA violation), and 3 (wrongful termination) against both Meeker and Hurst. The court further GRANTS the Motion to Dismiss, with leave to amend, as to claims 4 (IIED) and 5 (defamation) against Meeker.

The court otherwise DENIES Defendants' Motion to Dismiss claims 4 and 5 against Hurst. If Plaintiff chooses to file an amended complaint, she must reassert her claims 4 and 5 against Hurst or they will be waived.

If Plaintiff can do so, she must file an amended complaint by November 18, 2019.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 18, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Estacion v. Kaumana Drive Partners, LLC, et.al*, Civ. No. 19-00255 JMS-KJM, Order Granting in Part and Denying in Part Defendants Hurst's and Meeker's Motion to Dismiss, ECF No. 19.